| JETERS, J.
This litigation began as an action against Cold Springs Hunting Club, Inc., a Louisiana nonprofit corporation, and its board of directors, individually and in their capacity as directors, by a few of its members, seeking injunctive relief and damages. Three of the original plaintiffs, Bobby Slaydon, Connie Welch, and Wallace Martin, have appealed the trial court’s rejection of their claims. For the following reasons, we reverse the trial court’s judgment which denied the appellants’ request for a permanent injunction. Additionally, we render judgment, granting the appellants’ request for a permanent injunction but rejecting their claims for damages.
PROCEDURAL HISTORY
On March 1, 2001, Bobby Slaydon, Connie Welch, John Jett, Jarrod Jett, Joseph Jett, Wallace Martin, Jason Martin, David Martin, Robert Martin, and Clinton Thompson filed a petition for injunctive relief against Cold Springs Hunting Club, Inc. (the Cold Springs Club) and its board of directors, Wayne West, Jerry Harvey, Ben West, J.C. Haymon, Marvin Massey, Alton Dalme, Vic Trapp, Dale Nash, and Jerry Funderburk. The basis of their claim for relief was that their membership in the Cold Springs Club had been improperly terminated by action of the board of directors for violation of a club rule relative to hunting deer with dogs. The plaintiffs asserted that the rule that the board of directors used to terminate their membership had been enacted in violation of the corporation’s bylaws. Additionally, the plaintiffs sought general monetary relief for the damages they suffered as a result of their membership being terminated.
The trial court issued a temporary restraining order on March 2, 2001, enjoining the defendants from terminating the plaintiffs’ membership and ordering the board of directors to accept their annual dues. After an April 10, 2001 hearing, lathe trial court issued a preliminary injunction, enjoining the board of directors from removing the plaintiffs as members of the corporation until it held a hearing to determine the plaintiffs’ membership status.[1] The trial court signed a judgment to this effect on June 6, 2001. The board of directors held a hearing to address the membership issue and, after considering the comments expressed at the hearing, again terminated the plaintiffs’ membership in the Cold Springs Club.
There have been two trials on the merits in this matter, with the first occurring on September 25, 2001. At the beginning of the first trial, counsel for the plaintiffs announced that John, Jarrod, and Joseph Jett were withdrawing as party plaintiffs in the litigation. Following that trial, the trial court rendered judgment in favor of *1190 the defendants, rejecting the plaintiffs’ request for a permanent injunction and damages. The trial court signed a judgment to this effect on September 26, 2001.[2] The plaintiffs appealed this judgment, and, in an unpublished opinion, a panel of this court vacated the judgment and remanded the matter to the district court for a new trial on the permanent injunction. Slaydon v. Cold Springs Hunting Club, Inc., 01-1577 (La.App. 3 Cir. 4/3/02).
After remand, the plaintiffs filed a supplemental and amended petition, asserting additional grounds for relief. This filing occurred on April 24, 2002, and the defendants answered the pleading on May 10, 2002. On June 4, 2002, the parties entered into a stipulated judgment, agreeing to the issuance of a preliminary | ¡¡injunction enjoining the defendants “from terminating the membership interests of the plaintiffs” in the Cold Springs Club and from enforcing the club rule at issue. The stipulated judgment further ordered that the hunting club “receive dues for both the 2001[sic]— 2001 and the 2001-2002 years from plaintiffs.” [3]
The second trial on the merits occurred on September 6, 2002. At the beginning of trial, the parties stipulated that they would adopt the testimony and exhibits adduced at the September 25, 2001 trial as a part of the evidence to be presented and that the prior testimony and exhibits would be supplemented by the additional evidence that might be presented on that day. The stipulation further provided that the supplemental evidence would include, but not be limited to, “whether the corporate rule at issue in this matter affects the means and methods of taking game, and whether the corporate rule at issue had to be adopted by the membership of the corporation, and any other matters that plaintiff or defendant may present.”
On September 23, 2002, the trial court rendered written reasons for judgment, denying the plaintiffs’ request for a permanent injunction and damages. The trial court signed a judgment to that effect on September 27, 2002.[4] The appellants, Slaydon, Welch, and Martin, have asserted the following assignments of error in their appeal:
1. The trial court committed an error of law and manifest error by holding that the rule [under which their membership was terminated] did not have to be voted on or was voted on by the membership of the Corporation.
2. The trial court committed an error of law and was manifestly | ¿erroneous in its ruling that [the provisions of La.R.S. 12:217] had not been violated and thus the rules were invalid.
3. The trial court committed both manifest error and an error of law by failing to invalidate [the rule at issue] because it is ultra vires in that it violates the corporate charter of the Corporation.
4. The trial court committed manifest error and an error of law by ruling that the [pjlaintiffs could be termi *1191 nated for actions taken on land leased by a separate juridical entity to which they do not belong.
UNDISPUTED FACTS
While the two separate trials produced a significant amount of conflicting evidence, the testimony and exhibits in the record establish certain undisputed facts. In fact, most of the disputed facts do not affect the result in this litigation.
The record establishes, without question, that Cold Springs Hunting Club, Inc. was incorporated as a non-stock, single membership class, nonprofit corporation in April of 1991. Its articles of incorporation provide that its purpose is “to promote wildlife conservation, friendly relationships with land owners, safety, fellowship, and ethical hunting through club functions.” However, despite this high-sounding purpose, the corporation was formed basically as a hunting club. Concerning the powers of the board of directors, Article V, Section 2 of the articles of incorporation provides that “[t]he board of directors and officers shall control all functions and business of the Cold Springs Hunting Club, Inc.”
Initially, Article VIII of the articles of incorporation provided that a member could be removed from the membership rolls for failure to pay his or her dues and for any action that would reflect “dishonor and disgrace” on the corporation. Amendments to the articles of incorporation adopted at a membership meeting on February 21, 1995, deleted the provision in Article VIII which authorized the board |Rof directors to remove members in certain instances. Therefore, at the time of the action complained of in this litigation, the articles of incorporation provided no guidance concerning grounds for termination of membership.
On the other hand, and despite containing some apparent internal conflicts, the bylaws of the Cold Springs Club do provide some guidance in discerning the obligations of the membership, as well as the power of the board of directors in membership disputes. Article III, Section 9 of the bylaws provides:
Violations of a membership agreement by any member shall be acted upon by the Board of Directors and if deemed appropriate, said Board may cancel an individual membership or any specify [sic] other penalty. No money shall e[sic] returned for violation [sic] of membership agreement.
However, the record contains no evidence of the terms of any membership agreement. The only thing that resembles such an agreement is the annually promulgated camping and hunting rules provided to the membership prior to the beginning of each hunting season. These camping and hunting rules varied from year to year and established general rules of behavior, addressing such matters as camping locations, safety issues, construction of deer stands, and guests brought to hunt on the lease. Additionally, these rules specifically addressed certain aspects of harvesting the deer population.
Concerning the authority of the board of directors, Article IV, Section 1 of the bylaws provides that “[t]he government of the club and the direction of its work, internal affairs, and activities generally shall be vested in the Board of Directors herein referred to as the ‘Board.’ ” Additionally, Article IV, Section 7 provides:
The Board of Directors shall be and is hereby authorized to adopt such rules and regulations by Resolution as may be deemed advisable for the government of the Board; the proper conduct of business of the club, guidance and conduct of committees, officers, employees, caretakers,^j^overseers, and members, and generally the Board shall be empowered *1192 to do whatever in its judgment may be necessary to preserve the best interest of the club or calculated to increase the efficiency of the club and to carry out the main purpose of this organization.
The general power to remove members is now set forth in Article IV, Section 9 of the bylaws. That power does not correspond to the power previously granted by Article VIII of the articles of incorporation. Instead, Article IV, Section 9 limits the board’s authority to remove members to two specific situations, providing:
The Board of Directors shall have the power to expel or suspend, either temporarily or permanently, any member for violation of any bylaw, or any state or federal game law, but no members shall be suspended ore [sic] expelled without being given a hearing and an opportunity to be heard by the Board.
(Emphasis added.)
The bylaws also grant certain powers over the hunting activities to the membership. Specifically, Article III, Section 18 provides:
The membership of the Association shall have the right to set limits, seasons, hours, and means and methods of taking game from lands leased by the Association provided such action is not over and beyond the regulations as set by the Department of Wildlife & Fisheries.
(Emphasis added.)
In June of 1991, the Cold Springs Club entered into a lease with IP Timberlands Operating Company, LTD (IP), wherein it leased 5,922 acres of land for hunting purposes. Roads constructed by IP dissected the property, thereby creating subsections on which the club members could hunt.
In October of 1994, an additional 1,317 acres of land became available to the Cold Springs Club for hunting purposes through a lease with Boise Southern Company (Boise Southern). This land, which is adjacent to the leased IP land, is similarly dissected by company roads, and these artificially created subsections were |7used to establish specific hunting areas. However, the Cold Springs Club did not acquire the Boise Southern property in its name, but in the name of Ben West Hunting Club, Inc. (the Ben West Club), another nonprofit corporation incorporated in August of 1994. Wayne West, a member of the Cold Springs Club board of directors, testified that the Ben West Club was formed to lease the Boise Southern property because he had been informed that Cold Springs Club could not lease land in its name from another timber company as long as it was leasing land from IP. The Boise Southern lease was amended in May of 1999 to add 266 acres and again, at a later time, to add 1,852 acres.[5] While the testimony is conflicting concerning when the various members of the Cold Springs Club became aware that the Boise Southern property was subject to a lease in the name of the Ben West Club, it is undisputed that the Cold Springs Club members treated the Boise Southern property as if it had been leased in the Cold Springs Club’s name.
The first reference to hunting with dogs appeared in the 1993-1994 hunting and camping rules. Those rules contained the following language:
21. The last 15 days of the open deer season will be open to dog hunting on the CSHC. One (1) guest per hunter will be allowed during open dog season.
22. All dog hunters must hunt together in one (1) group.
Sometime within the next three years, the fifteen-day limit disappeared from the an *1193 nual camping and hunting rules, and the membership began using dogs to hunt deer at any time during the season.
The annually-promulgated camping and hunting rules permitted members to establish temporary camps on the leased property, subject to specific rules concerning [sthe camp operation. The 2000-2001 camping and hunting rules, the source of the current litigation, provided that there would be two permanent camps on the leased property — the Cold Springs Project Camp and the Sim-Self Camp. In the 2000-2001 rules, the board of directors attempted to further regulate the use of dogs during that hunting season through the following rule (hereinafter referred to as Rule 16):
16. There shall be two groups of dog hunters: (1.) Wayne West Camp, and (2.) Cold Springs Project Camp. There shah be NO EXCEPTIONS.
The Wayne West Camp is not located on IP or Boise Southern land, but on land owned by Wayne West and others. Neither the Cold Springs Club nor the Ben West Club have a lease on the property.
The board of directors attached an acknowledgment form to the 2000-2001 hunting and camping rules forwarded to the membership. The form contained a signature line for the member to sign, acknowledging that he had read and agreed to abide by the rules. It also contained an admonition that “[f]ailure to complete this form could result in termination of membership.” The record contains the signed acknowledgment forms of Connie Welch and Wallace Martin. However, in signing the form, each of these appellants added a hand-written objection to Rule 16. The record does not contain any evidence that Bobby Slaydon ever signed an acknowledgment form. All three appellants admit that, during the 2000-2001 hunting season, they violated Rule 16.
OPINION
In its reasons for judgment, the trial court stated the following:
At the outset, the court notes that all plaintiffs, except one, admitted violating Rule 16. They all contend Rule 16 is invalid since it deals with “means or methods of taking game” and was not voted on by the membership as required by the by-laws.
Rule 16 was adopted to limit the use of dogs for deer hunting ^purposes to two camps; (1) The Wayne West Camp and (2) Cold Springs Project Camp. The stated purpose of the two camp rule, according to various members who testified, was to have a means of control over where dogs were used, etc. as a safety measure. This was considered to be the safer method of using dogs rather than allow unfettered use of dogs considering the number of hunters that belonged to the club. Plaintiffs contend that this rule is one that deals with “means or methods of taking game”.
The court finds that Rule 16 is not a rule dealing with “means or methods of taking game”. The evidence showed that when the club was formed, dogs were not allowed to be used at all. Thereafter, the timber company which owned the land was asked to allow dogs. It agreed and the members voted to allow dog hunting. This approval by the members to begin using dogs, as opposed to not doing so earlier, was a rule dealing with “means or methods of taking game”. Whether or not to use dogs on the lease by the club clearly dealt with that issue.
However, thereafter, it became necessary to control just how dogs were to be used because of safety concerns. Rule *1194 16 was a result of that concern. It does not deal with the broader question of whether dogs may be used or not, but rather under what conditions dogs will be used.
Since Rule 16 was not a rule that dealt with “means or methods of taking game”, it was not required that the rule be voted on by the membership. Thus, the contention of the plaintiffs that Rule 16 is invalid for that reason is not supported by the evidence and law.
Furthermore, testimony established that the decision to limit the use of dogs to two camps was voted on at a membership meeting. Thus, the court finds that Rule 16 was adopted by a vote, of the membership present at the meeting.
A review of the Articles of Incorporation for the club further supports the validity of Rule 16. Article IV deals with the makeup and authority of the Board of Directors. Specifically, Section 7 grants the power to the Board to adopt rules for a variety of reasons including “.... conduct of .... members, and generally the Board shall be empowered to do whatever in its judgment may be necessary to preserve the best interest of the club or calculated to increase the efficiency of the club ... ”.
Thus, it is clear that the Board of Directors could adopt Rule 16 without a vote of the membership as part of its authority under Article IV, Section 7.
Having concluded that Rule 16 is valid for the reasons stated and that the members were given their due process rights through the proper methods, the plaintiffs have failed to meet the required burden of proof for the issuance of the permanent injunction. The request is denied and the claim of plaintiffs dismissed. Cost of court are assessed against plaintiffs.
In their assignments of error, the appellants assert that the trial court committed both errors of fact and law.
 A trial court’s finding of fact may not be set aside unless the court of appeal determines that the finding is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. at 844.
However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.
Evans v. Lungrin, 97-0541, 97-0577, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735 (citations omitted).

Assignment of Error Number 1

In their first assignment of error, the appellants argue that the trial court erred in concluding that Rule 16 did not address the “means and methods of taking game” and that it was a safety measure not requiring approval by the membership. The appellants further argue that the trial court erred in concluding that the membership had approved Rule 16.
We disagree with the trial court’s conclusion that Rule 16 did not address the means and methods of taking deer. While Rule 16 certainly addressed safety concerns, it also regulated that portion of the hunting process which involved the use of *1195 dogs in the taking of deer. This is a means and method of the hunt.
Additionally, based on our review of the record, we agree with the appellants that the trial court erred in concluding that the membership approved Rule 16. While Jerry Harvey, the chairman of the board of directors, did testify that the decision to Ininclude Rule 16 had been made at a membership meeting held in 1996, he also testified that the board of directors adopted Rule 16 in May of that year to be effective for the 1996-1997 hunting season. However, the record clearly contradicts this testimony. The minutes of the annual meeting of the membership held on March 4, 1996, make no reference to such a vote, and the camping and hunting rules for 1998-1999 and 1999-2000 contain no rule similar to Rule 16. Moreover, the minutes of the board of directors meeting held on April 11, 2000, contain the following notes regarding the “[djiscussion for rules for the 2000 Hunting Season”:
Add: 15 There will be two groups of dog hunters-permanent locations: The West Camp and The Cold Springs Project Camp. There shall be NO exceptions to this rule.
Motion made by Vic, second by Dale to accept new rules and revisions; motion passed.
The minutes for the board of directors meeting held on May 9, 2000, contain the following notes regarding the rule:
# 15 Remove permanent location Motion by Alton seconded by Vic to accept revisions, motion passed.
[[Image here]]
Renumber rule 12-16 because of the above addition.
Thus, the record establishes that Rule 16 was enacted by the board of directors, not the membership, and that it was not enacted until the Spring of 2000.
Despite these erroneous factual conclusions, the trial court reached the right result in concluding that Rule 16 did not require the approval of the membership. Article III, Section 13 does not grant the membership exclusive authority in regulating the hunting process. It simply gives the membership the power to act in the absence of board action or to overrule the action of the board of directors in regulating certain aspects of the hunt. The plaintiffs failed to avail themselves of this provision by habringing the dispute to the membership for resolution and cannot now collaterally attack the validity Rule 16. Thus, while we find that the trial court did commit error in its determination of certain facts, that error does not change the result. Therefore, we find no merit in the appellants’ first assignment of error.

Assignment of Error Number 2

In their second assignment of error, the appellants assert that the trial court erred in concluding that the action of the board of directors in enacting Rule 16 violated the provisions of La.R.S. 12:217(A) which requires that the rules governing a nonprofit corporation “be reasonable, germane to the purpose of the corporation, and equally enforced as to all members of the same class.” They base this argument on testimony that all of the hunting and camping rules were not enforced against all members.
Connie Welch testified that there were no rules to govern conflicts when more than one group wanted to hunt with dogs on the two designated camps, that certain members of the board of directors controlled who could hunt on any given day, that some camp locations violated both the IP lease and the hunting and camping rules, that one board member allowed his dog to run free during turkey season, and that certain board members failed to lock the gates on the leased property as re *1196 quired by hunting and camping rules. Bobby Slaydon, Wallace Martin, and John Jett all complained that some board members had constructed deer stands along IP roads in violation of both the terms of the lease and the hunting and camping rules. Although the testimony is vague concerning whether these witnesses ever mentioned the alleged violations to board members, all acknowledge that no formal complaint was ever filed.
|13 Jerry Harvey addressed some of these complaints in his testimony. According to Harvey, none of the deer stands to which Slaydon, Martin, and Jett referred violated the lease or the hunting camping rules. Additionally, Harvey testified that the complaint concerning the loose dog during turkey hunting season had been immediately addressed by picking up the dog.
By the plaintiffs’ own testimony, no formal complaint of these alleged violations was ever made, and, therefore, the board of directors was never called upon to address them. Therefore, we find that the record contains no evidence to establish the unequal treatment prohibited by La. R.S. 12:217(A), and we find this assignment of error to be without merit.

Assignment of Error Number 3

The appellants argue in this assignment of error that the trial court erred in failing to invalidate Rule 16 because it is ultra vires in that it violates the corporate charter of the Cold Springs Club. Specifically, the appellants assert that the rule violates that portion of Article III of the articles of incorporation which provides that “[n]o part of the net earnings or other assets of this corporation shall enure to the benefit of any private stockholder or individual.” They argue that Rule 16 allows Wayne West to personally benefit from his relationship with the corporation because the Wayne West Camp is his personal property and not subject to lease by the Cold Springs Club or the Ben West Club.
A member of a nonprofit corporation may bring an action against the corporation and its board of directors to enjoin the performance of an act by the corporation on the basis that the corporation lacked the capacity or power to perform the act. See La.R.S. 12:208. While the appellants have directed us to nothing in the | urecord that would suggest that Wayne West received any personal benefit from allowing the Cold Springs Club members to hunt on his private land, we do find that the rule is invalid on its face. While there is nothing wrong with allowing the membership of the Cold Springs Club to hunt on property not subject to lease by the corporation, nothing in the articles of incorporation or bylaws gives the board of directors the authority to require the membership to hunt on property not under lease by the club either directly or through the Ben West Club. Additionally, the record contains no other evidence to establish any explicit or tacit adoption of Mr. West’s personal property as a part of the property under lease by the Cold Springs Club.
Therefore, the trial court erred in concluding that the board of directors had the authority to adopt a rule requiring the club members to hunt with dogs on property not subject to lease by the club. Thus, we find merit in this assignment of error and conclude that Rule 16 is not enforceable against the appellants. Having concluded that the trial court erred in finding Rule 16 valid, we set aside the judgment denying the permanent injunction and grant the appellants a permanent injunction, enjoining the defendants from terminating their membership in the Cold Springs Club for violating Rule 16. In reaching this conclusion, we find it unnecessary to address the merits of the appellants’ last assignment of error.

*1197
Damages

After obtaining temporary and preliminary injunctive relief, the appellants failed to obtain permanent injunctive relief and lost their memberships by judgment of the trial court on September 26, 2001. On April 3, 2002, this court vacated the trial court judgment and ordered a new hearing on the permanent injunction, effectively reinstating the preliminary injunction. Thereafter, the appellants obtained preliminary |isinjunctive relief by the consent judgment of June 4, 2002. However, that preliminary relief terminated with the trial court judgment of September 27, 2002, denying permanent in-junctive relief. The September 27, 2002 judgment has continued in effect through this appeal. Thus, the timing of the judicial proceedings was such that the appellants were prevented from hunting as members of the Cold Springs Club for both the 2001-2002 and 2002-2003 hunting seasons.
The appellants suffered no special damages as a result of their membership termination, and the general damages suffered are minimal. The only damages testified to by the three appellants involved their embarrassment and anxiety over having to explain to others why they had been removed from the membership rolls of the corporation. None of the appellants sought professional treatment. In fact, Slaydon and Martin both joined other hunting clubs and, thus, did not miss participating in any hunting season. Welch presented no testimony concerning his hunting habits since his membership termination.
We recognize that, while its organizational structure is that of a nonprofit corporation with a lofty stated purpose for its existence, the Cold Springs Club is in reality a hunting club — nothing more and nothing less. Still, the issue of damages to the individual members must be considered under the law governing nonprofit corporations.
Louisiana Revised Statute 12:208 provides the statutory approach for setting aside the ultra vires act of a nonprofit corporation. That statute gives a corporate member authority to bring an action to assert the invalidity of an act of the corporation or to enjoin the performance of the act. La.R.S. 12:208(A). However, that statute provides no monetary remedy to the member aggrieved by the action of hfithe corporation. In fact, damages are only considered if the ultra vires act is associated with execution of a third-party contract, and, even then, the damages are awarded to the corporation and not the members. La.R.S. 12:208(A)(2).
The appellants had two opportunities to challenge Rule 16 before their dismissal as members. First, they could have brought the dispute to a membership meeting and requested that the membership overrule the board of directors by exercising its authority to regulate the means and methods of taking game granted by Article III, Section 13 of the bylaws. Second, they could have brought an action pursuant to La.R.S. 12:208 to have Rule 16 declared an ultra vires act before any attempt to enforce it. Instead, the appellants chose to violate Rule 16 and await the consequences. We find that such action or inaction on their part precludes the award of monetary damages.
DISPOSITION
We reverse the trial court’s judgment, rejecting the appellants’ request for a permanent injunction; and we render judgment, awarding Bobby Slaydon, Wallace Martin, and Connie Welch a permanent injunction against Cold Springs Hunting Club, Inc. and its board of directors, enjoining the defendants from terminating *1198 the appellants’ memberships in the corporation based on violations of Rule 16 of the corporation’s camping and hunting rules for the 2001-2002 hunting season. Furthermore, we render judgment in favor of Cold Springs Hunting Club, Inc. and its board of directors, and against Bobby Slaydon, Wallace Martin, and Connie Welch, rejecting the appellants’ claims for monetary damages. We tax one-half of the costs of this appeal to the appellants and one-half to the defendants.
REVERSED AND RENDERED.

. Although the record does not contain any pleading wherein they .removed themselves from the litigation, the judgment on the preliminary injunction makes no mention of Wallace or Jason Martin,

.While the June 6, 2001 judgment did not mention Wallace or Jason Martin, this judgment lists them as party plaintiffs. Apparently based on the statement to the trial court at the beginning of trial that they were no longer parties to the litigation, the judgment does not mention John, Jarrod, or Joseph Jett. However, it does not mention Clinton Thompson either.

. This judgment mentions all of the original plaintiffs except David Martin.

. In this judgment, the plaintiffs are referred to as "BOBBY SLAYDON, ET AL.”

. The copy of this amendment in the record is not dated.