EXXON MOBIL PIPELINE COMPANY
v.
JAMES H. BOYCE AND COASTAL RENTAL CORPORATION
No. 2007 CA 0241.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
Not Designated for Publication
ROBERT B. McNEAL, KATHERINE M. DETERMAN, New Orleans, LA, Counsel for Plaintiff/Appellant Exxon Mobil Pipeline Company.
WILEY J. BEEVERS, RAYLYN R. BEEVERS, STEVEN M. MAUTERER GRETNA, LA, Counsel for Defendant/Appellee, James H. Boyce and Coastal Rental Corporation.
Before: CARTER, WHIPPLE, GUIDRY, GAIDRY, and HUGHES, JJ.
HUGHES, J.
This is an appeal from a judgment of the 23rd Judicial District Court that denied appellant's request for a permanent injunction.[1] For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
Over the past several decades, ExxonMobil Pipeline Company (Exxon) and/or its predecessors-in-interest have constructed several pipelines on property now owned by Coastal Rental Corporation (Coastal) and James Boyce. The property was originally owned by Sorrento Dome Land Corporation (Sorrento). In 1956, a "Right of Way Grant" was executed by Sorrento in favor of Interstate Oil Pipeline Company (Interstate) that gave Interstate a right of way over Sorrento's property, described as "[a]ll of Sections 16, 17 and 18-T10S-R4E," to construct pipelines, together with a separate right of ingress and egress "over and across said lands."
In 1970, Sorrento and Humble Pipe Line Company (Humble), Interstate's successor, executed another "Right-of-Way Agreement" which gave Humble a specific 50-feet-wide right-of-way to construct three additional pipelines on Sorrento's property. That agreement, like the 1956 agreement, also granted Humble a separate right of ingress and egress. (R. P-2)
In 1998, an amendment to the 1970 agreement was executed between Coastal, Sorrento's successor-in-interest, and Exxon, Humble's successor-in-interest. The 1998 agreement entitled "Amendment of Right Of Way Agreement" refers to the 1970 agreement as the "Original Right Of Way Agreement." The amendment allowed Exxon to construct and maintain two additional pipelines "within the area affected by the Original Right Of Way Agreement," thus within the 50 feet granted in the 1970 agreement. (R. P-3) The 1998 agreement also covers a separate right of ingress and egress over "the [property", which refers to the rights of way granted previously in both the 1956 and 1970 agreements.
Prior to 2005, Exxon had enjoyed the use of roads over Coastal's property to access its pipelines. (R. pg. 197) Thereafter Exxon claimed it was denied the use of said roads on two occasions. (R., pg. 213)
Kevin Harriman, supervisor of ground maintenance at Chem-Spray South, testified that he and his crew have been employed by Exxon to mow Exxon's pipelines. He stated that on each occasion he and his crew would follow an Exxon employee and would use various roads over Coastal's property. Mr. Harriman stated that on one occasion he was told by Mr. Boyce "that if [he] took one more step toward [Coastal's] property [he] wouldn't be going nowhere but to jail." (R., pg. 228) Mr. Harriman further testified that on another occasion he overheard Mr. Boyce "cussing" at Mike Arrant, an employee of Exxon, insisting that Exxon not "come down through here." (R., pg. 232)
Kirk Brumfield, a pipeline technician employed by Exxon, testified that he either inspects or visits the pipeline six to eight times per year and that he first met Mr. Boyce on July 31, 2005. (R., pg. 239) Mr. Brumfield testified that on that day Mr. Boyce conditioned Exxon's access to the pipeline upon whether Exxon would agree to cut the entire right of way, including the swamp. (R., pg. 242) But when Exxon was not able to obtain approval for Mr. Boyce's request, its employees were told to "leave immediately" and that they "were not allowed on the property unless [they] went via right of way access only." (R., pg. 242) Mr. Brumfield even stated that Mr. Boyce told him that he had installed the gates because he wanted to keep the pipeline companies out. (R., pg. 244)
On August 2, 2006, Coastal sent Exxon a letter that stated, in pertinent part:
We recognize Exxon Mobil's right to use our property during an emergency. We interpret this to mean the `rupture' of said pipeline. Mere anomalies are not considered an emergency and our roads and bridges are not to be used for access during normal operations without our specific written permission. Should that occur, we will consider it to be a legal trespass and act accordingly.
Access to your servitude is hereby restricted for ingress and egress to the servitude itself only except as above stated for emergency procedure. (R. P-5)
It thus appears that Coastal attempted to restrict Exxon's rights of ingress and egress to the area occupied by the pipelines.
On September 12, 2006, Exxon filed a petition requesting a preliminary injunction, permanent injunction, and damages. Exxon requested that the trial court enjoin appellees from denying and/or interfering with its access to the property, and that the trial court grant it damages, attorney's fees, and costs. (R. pg. 11)
The preliminary injunction was denied, presumably ex parte, on September 14, 2006 and the "rule" on the permanent injunction was set for September 21, 2006. However, on September 21, 2006, the matter was continued without date and was set for trial on November 8, 2006 by "Bench Trial Order." On October 13, 2006 a judgment was rendered denying Exxon's request. Exxon appeals and makes the following assignments of error:
1) The trial court erred by applying incorrect legal standards in denying Exxon's request for a permanent injunction;
2) The trial court erred by holding that the 1956 Agreement does not give Exxon the right to traverse over and across all of sections 16, 17 and 18 of Township 10 South, Range 4 East;
3) The trial court erred in its factual findings;
4) The trial court erred in determining that the construction of locked gates does not constitute interference with Exxon's rights under the 1956 Agreement;
5) The trial court erred in refusing to admit into evidence certified copies of records from the Louisiana Secretary of State, a land survey, and testimony of Ernest Gammon.

LAW AND ARGUMENT

A. EVIDENTIARY ERRORS
In its fifth assignment of error, Exxon challenges the trial court's rulings in excluding certain evidence and testimony. If, upon review, we find that the trial court committed an evidentiary error that interdicts the fact-finding process, we are required to then conduct a de novo review. As such, alleged evidentiary errors should be addressed first on appeal. Wright v. Bennett, XXXX-XXXX (La. App. 1st Cir. 9/28/05), 924 So. 2d 178, 182. This circuit has previously noted that La. C.E. art. 103(A) provides, in part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Wright, 924 at 183. "The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or denial of evidence is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. If the effect on the outcome of the case is not substantial, reversal is not warranted." Wright, 924 So.2d at 183. Generally, the trial court is granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Wright, 924 So. 2d at 183, citing Turner v. Ostrowe, XXXX-XXXX (La. App. 1 Cir. 9/27/02), 828 So.2d 1212, 1216, writ denied, 2002-2940 (La. 2/7/03), 836 So.2d 107.
Exxon first challenges the exclusion of records of the Louisiana Secretary of State. A review of the record reveals that the trial court refused to admit the records into evidence because they are illegible. They were proffered. We have examined them and agree that they are illegible. Therefore, we find no error in the trial court's decision to exclude the records due to that fact.[2]
Exxon also challenges the exclusion of a land survey and certain testimony of Ernest Gammon regarding said survey.[3] Because of the reasons that follow, although we believe these exclusions to be in error, there is no substantial effect on the outcome of the case.

B. LEGAL ERRORS
Exxon also alleges legal error on the part of the trial court. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Further, legal errors are prejudicial when they materially affect the outcome of a case and deprive a party of substantial rights. Slaydon v. Cold Springs Hunting Club, Inc., XXXX-XXXX (La. App. 3 Cir. 4/2/03), 842 So.2d 1187, 1194. We look now to the three assignments of legal error made by Exxon,

1. BURDEN OF PROOF
Exxon first alleges that the trial court erred in relying on La. C.C.P. art. 3601 and urges that a showing of irreparable harm is not required in an action for an injunction to protect a servitude. In its reasoning, the trial court stated that an "injunction is an extraordinary remedy and should only issue where the party seeking it is threatened with irreparable loss without adequate remedy of law." (R., pg. 148) Although La. C.C.P. art. 3601, et seq. is the usual statutory ground for the issuance of injunctive relief, that article itself contains a provision recognizing the existence of grounds for an injunction which do not require the parties seeking the injunction to show evidence of irreparable injury.
Louisiana Code of Civil Procedure article 3663 provides that:
"Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, possession, or the enjoyment.
Exxon is requesting a permanent injunction to protect and restore its real right of ingress and egress over the property. Pursuant to this article, Exxon need only prove its real right has been disturbed, and that it or its ancestors in title have had the right of ingress and egress for more than one year, without the necessity to show irreparable harm. Red River v. Noles, 406 So.2d 294 (La. App. 3 Cir. 1981), El Paso Field Service, Inc. v. Minvielle, 33-1293 (La. App. 3 Cir. 3/3/04), 867 So.2d 120.
Because Exxon's action seeks to protect and restore a real right, we find that the trial court's analysis under La. C.C.P. art. 3601 was legally incorrect. Exxon is not required to make a showing of irreparable harm in this instance. The first assignment of error has merit.

2. CONTRACT INTERPRETATION
Whether a contract is ambiguous or not is also a question of law. Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1 Cir. 6/20/97), 696 So.2d 1031, 1037, writ denied, 97-1911 (La. 10/31/97), 703 So.2d 29. When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Sanders, 696 at 1037. In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Sanders, 696 at 1037.
In its second assignment of error, Exxon alleges legal error in the trial court's interpretation of the contracts. A right of way is a conventional predial servitude established by contract. Leblanc v. Trappey, 02-1103 (La. App. 3 Cir. 2/5/03), 838 So.2d 860, writs denied, 03-651, 03-684, (La.5/2/03), 842 So.2d 1107, 842 So.2d 1109. Therefore, the title creating a right of way regulates its use and the extent to which it is used. La. C.C. art. 697. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. But La. C.C. art. 2046 states that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Further, "[t]he words of a contract must be given their generally prevailing meaning." La. C.C. art. 2047. There are three separate contracts at issue herein: 1) the 1956 Right of Way Grant, 2) the 1970 Right of Way Agreement, and 3) the 1998 Amendment of Right of Way Agreement.[4]

THE 1956 RIGHT OF WAY GRANT
The 1956 agreement states, in pertinent part:
Grantor, in consideration of Two Thousand Eight Hundred thirty-five and No/100 ($2,835.00) DOLLARS, in hand paid, receipt of which is hereby acknowledged, does hereby grant and convey unto Interstate Oil Pipeline Company, a Deleware corporation, with principal office in Shreveport, Louisiana hereafter called Grantee, a servitude or right of way for the purpose of constructing, maintaining, operating, patrolling, (including aerial patrol) entering, repairing, renewing and removing in whole or in part a pipeline for the transportation of crude petroleum and other minerals their products and derivatives, whether liquid or gaseous, together with the necessary fixtures, equipment, and appurtenances across the following described land situated in said State and Parish, to wit:
All of Sections 16, 17 and 18-T10S-R4E
together with the right of ingress and egress to and from said right of way over and across said lands and adjacent lands of GRANTOR for any and all purposes herein granted with the right to maintain the right of way clear of trees, undergrowth, brush and other obstructions so as to prevent damage or interference with the efficient operation and patrol of pipe lines constructed under this grant. (emphasis added)
This contract creates two separate rights: the right of way to construct and maintain the pipeline and the right of ingress and egress to that right of way. We note that the right of way to construct and maintain the pipeline is not at issue in this case. The dispute lies only with the second right, that of ingress and egress to the right of way.
Upon review, the contract states that Exxon's pipeline right of way is across "AH of Sections 16, 17 and 18-T10S-R4E." Further, the contract clearly states that Exxon's right of ingress and egress to and from that right of way is "over and across said lands". The word "all" is specifically used to describe the land and must be given its generally accepted meaning. The right of ingress and egress is "over and across said lands", and "said lands" are "all of Sections 16, 17 and 18." Therefore, we find that this contract specifically states that Exxon's right of ingress and egress is over and across all of sections 16, 17 and 18-T10S-R4E. The trial court's conclusion to the contrary is legally incorrect.

THE 1970 AGREEMENT
The 1970 "Right-of-Way Agreement" states:
This for and in consideration of SIXTEEN THOUSAND TWO HUNDRED FIFTEEN AND NO/100 DOLLARS ($16,215.00) paid to the undersigned (herein called Grantor, whether one or more), which includes normal, initial, construction damage, the receipt of which is hereby acknowledged, the said Grantor does hereby grant and convey unto Humble Pipe Line Company (herein called Grantee), its successors, and assigns, a right-of-way and servitude to separately or simultaneously construct, maintain, operate, patrol (including aerial patrol), alter, repair, replace and remove three (3) pipelines, all below ground, for the transportation of crude petroleum and other minerals, their products and derivatives, whether liquid or gaseous, together with the necessary fixtures, equipment and appurtenances, across, upon and through the following described land situated in Ascension Parish, Louisiana to-wit:
Centerline description of Humble Pipe Line Company's fifty (50') foot wide right of way on property of Sorrento Dome Land Corporation et al in Sections 16, 17 and 18, Township 10 South, Range 4 East, Ascension Parish, La.
Beginning at a point in the west line of Section 18, T10S, R4E, which is also the west property line of Sorrento Dome Land Corporation et al, said point being S 00* 08' 33" E. 1531.00' from the Northwest corner of said Section 18;
* * *
8. Grantee shall have the right of ingress and egress with respect to the right-of-way and servitude hereby granted for the purposes of such right-of-way and servitude as set forth herein.
* * *
Thus, this contract gives Exxon two additional rights over-and-above the rights afforded it in the 1956 agreement: a servitude to construct three additional pipelines within a designated area, fifty feet in width, and a right of ingress and egress to that servitude. It does not remove or modify the 1956 right of way and accompanying right of ingress and egress.

THE 1998 AGREEMENT
The 1998 Agreement states:
* * *
Grantors hereby grant unto Grantee, subject to the same terms and conditions set forth in the Original Servitude Agreement as modified and amended by the Amendment of Right of Way Agreement, the right to construct, maintain and operate two (2) additional pipelines within the right of way, for a total of seven (7) pipelines within the right of way. The locations of these additional pipelines will be as depicted on Exhibit "B".
Grantors and Grantee further agree that Grantee shall have the right to make temporary use of a strip or strips of land as shown on Exxon Pipeline Company Drawing Number C33-455-28 dated 1-22-98, marked Exhibit" B", attached hereto, and not at the time occupied by a house, building, or other similar improvement, alongside and parallel to the right of way as shown on Exhibit "B", for purposes related to the initial construction and to the repair, replacement, and removal of the pipelines referred to herein and the right of ingress and egress over and across the Property and over and across Grantor's adjacent lands for all purposes incident to the Original Right of Way Agreement as amended by this Amendment of Right of Way Agreement. (emphasis added.)
* * *
The property description given in the 1998 agreement, like that of the 1956 agreement, references all of Sections 16, 17, and 18. The right of ingress and egress is described as over and across "the Property." Reference elsewhere in the 1998 agreement to "the Property" includes both the 1970 agreement and the 1956 agreement.[5]
Thus, the right of ingress and egress granted in the 1956 agreement has never been revoked and is confirmed in the 1998 agreement as over all of Sections 16, 17, and 18.
After a thorough review of the unambiguous language of the three agreements, we find that Exxon is granted a right of ingress and egress over all of Sections 16, 17, and 18.[6]

3. LOCKED GATES AMOUNT TO INTERFERENCE
In its fourth assignment of error, Exxon alleges that the trial court's conclusion that the construction of locked gates does not constitute interference with Exxon's right of ingress and egress is erroneous. A locked gate blocking access to the property does interfere with Exxon's accessibility. Because we find that Exxon has a real right of ingress and egress over all of sections 16, 17, and 18 we find merit in this assignment of error.[7]

C. FACTUAL ERRORS
Exxon alleges errors in the following findings of fact:
1) The roads Exxon desires to use were not in existence in 1956 or 1970.
2) Exxon can access the servitude at its intersection with Airline Highway.
3) Coastal and/or Mr. Boyce never denied Exxon access to the servitude.
4) An Exxon employee suggested that Mr. Boyce put up the gates.
Upon review of the record, we conclude that the trial court erred in the factual findings numbered 1,3, and 4 above. No evidence was introduced regarding when the roads in question were built. Therefore, we find that there is no factual basis to determine that they were not in existence in 1956 or 1970. Further, Exxon's use of any roads in existence in 1956 or 1970 is essentially irrelevant to the disturbance in its use of roads in 2005 and thereafter.
We also conclude that the trial court was clearly wrong to find that Coastal never denied Exxon access to its servitude. The letter sent by Coastal, through its attorney, specifically states that "[a]ccess to [its] servitude is hereby restricted." (emphasis added) Further, the uncontradicted testimony of Exxon's employees as well as the Chem-Spray employee establishes that Exxon was denied access to the servitude on more than one occasion.
And finally, there is no factual basis in the record to determine that the gates were Exxon's suggestion. The testimony of Paul Saltaformaggio, Sr., Exxon's Senior Staff Right of Way Claims Specialist, is that he would not have advised Mr. Boyce to put up gates. (R. pg. 216) Coastal did not provide a witness to contradict this testimony. As such, we find that the trial court erred in this finding of fact.
But we do not find error in the trial court's determination that Exxon can access the servitude via the servitude itself at its intersection with Airline Highway. The trial testimony clearly establishes a factual basis for this finding. Further, we do not find that this conclusion is manifestly erroneous under the record. We point out, however, that the fact that Exxon could get onto its pipeline servitude via a route that is not over sections 16, 17, or 18 is irrelevant to this case. Coastal owes Exxon a right of ingress and egress over all of sections 16, 17, and 18. Coastal cannot extinguish that duty by pointing out a route that is on the pipeline servitude itself. Such a result would deprive Exxon of its separate and distinct right of ingress and egress.

CONCLUSION
After de novo review, we find that the language of thel956 Right of Way Grant gives Exxon a right of ingress and egress over and across all of sections 16, 17 and 18. We further find that Coastal attempted to restrict Exxon's access to its servitude and that those attempts constituted a disturbance in Exxon's enjoyment of that right. Accordingly, the judgment denying Exxon's request for permanent injunction is reversed. All costs of this appeal are assessed to Coastal.
REVERSED.
WHIPPLE, J., dissenting.
I respectfully disagree with the report and would affirm the judgment of the trial court. In particular, I agree with the appellees that the 1956 and 1970 right-of-way agreements create two predial servitudes: one for the pipeline itself, which is not in dispute, and another, representing a right of ingress and egress, the nature of which is strenuously contested herein.
Contrary to Exxon's arguments, I agree with the trial court that the location of the right of passage, i.e., ingress and egress, is not designated or defined in the documents. Further, as appellees note, LSA-C.C. art. 730 requires that "doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." Because instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected, I agree with the trial court's denial of injunctive relief. Although a right-of-way for ingress and egress was established, the exact "extent, location and manner of exercise" were not specified in the documents.
While the pipeline servitude and right-of-way contemplated and granted in the 1956 document specifies "All" of the sections of land, the document does not use "All" to describe the right-of-ingress/egress right of way. I read the 1956 contract as granting a right of ingress "to and from" the "said right-of-way," "over and across said lands and adjacent lands," as opposed to the majority's interpretation that the right of ingress applies "over and across all" "lands and adjacent lands." Further, the contract specifically recognizes and reserves the grantor's right to "full use and enjoyment of the premises except... as necessary for the purposes . . . granted."
Moreover, the 1970 contract, which all parties agree was confected to allow for construction of additional pipelines, again reserves the grantor the "right to the full use and enjoyment of its property" except as necessary for the purposes "granted" and provides that heavy equipment used in the construction be kept "on the right-of-way and servitude granted." The 1970 agreement further recognizes that the grantor retains the right "to fence said right-of-way," etc., which provision makes no sense if, as Exxon contends, the 1956 and 1970 documents granted Exxon the right to locate both its pipeline as well as its ingress/egress route anywhere desired.
The 1998 agreement grants no greater rights except to recognize that "the right of way conveyed in the Original Servitude Agreement is a total of fifty feet wide" and is amended to grant the right to construct, maintain and operate two additional pipelines "within the right of way" and to make "temporary use of a strip or strips of land" shown on a designated map "for purposes related to the initial construction and to the repair, replacement, and removal of the pipelines referred to herein and the right of ingress and egress over and across the Property and over and across Grantors' adjacent lands," "provided the house is not occupied," etc. If the parties had intended to grant Exxon a right of unfettered access over "All" of the grantor's property, for purposes of ingress and egress, none of these (and various other provisions in the documents) would have been necessary. However, a review of the documents at issue shows they do not unambiguously grant such unfettered access with regard to "the right of ingress and egress."
On the record herein, the trial court's factual findings as well as its interpretation of the contracts at issue are supported by both the evidence and the law. Because I find the trial court correctly concluded that Exxon was not legally or factually entitled to an injunction against the landowners restricting and limiting their use of their own property, I would affirm the denial of the injunction sought by Exxon.
For these reasons, I respectfully dissent.
GAIDRY, J., concurring.
I respectfully concur in the majority's decision to reverse the trial court's judgment, as I agree that Exxon is entitled to injunctive relief against the defendants. Where my conclusions diverge from those of the majority relate to (1) the majority's failure to issue a permanent injunction after reversing the judgment, and (2) its failure to describe in reasonable detail the defendants' acts that are to be enjoined or restrained,
As a matter of judicial economy, we should in our decree herein grant the injunctive relief to which Exxon is entitled under the facts before us, rather than merely reversing the trial court's judgment and implicitly leaving the issuance of such relief to the trial court.
On their face, the agreements are ambiguous as to the location of Exxon's access (ingress and egress) to the pipeline right of way, but that ambiguity can be resolved based upon the parties' prior custom and usages in that regard. Exxon does not seem to dispute the fact that the roads it customarily used before the dispute arose afforded it ingress and egress to "all" of the property for the purposes intended by the agreements. The present action is not one seeking a declaratory judgment interpreting the geographic scope of Exxon's potential exercise of its right of ingress and egress under the agreements. Thus, the scope of the injunction should be narrowly tailored to the facts and the actual conduct of the defendants in derogation of the rights previously exercised by Exxon. Louisiana Code of Civil Procedure article 3605 requires that "[a]n order granting ... a final injunction . . . shall describe in reasonable detail, and not by mere reference to the petition and other documents, the acts or acts sought to be restrained." (Emphasis supplied.) See, e.g., Miller v. Knorr, 553 So.2d 1043 (La. App. 4th Cir. 1989).
NOTES
[1] Although the record contains an order denying the request for preliminary injunction dated September 14, 2006, the judgment made the subject of this appeal, dated October 13, 2006. denies "the plaintiff's claims for a preliminary and permanent injunction." The appeal, however, is only of that portion of the judgment that denies the permanent injunction.
[2] We also note that Exxon attempted to introduce the records for the purpose of proving that it is indeed the successor-in-interest to Humble. There is other evidence in the record that establishes the relationship of Exxon to both Interstate and Humble. Further, Coastal in its answer does not deny Exxon's status as successor to Humble.
[3] We note that although Exxon attached the deposition of James Boyce to its Post-Trial Memorandum and refers to it in argument, the deposition was never introduced into evidence at the trial and therefore cannot be considered in our review.
[4] The 1956 agreement is entitled "Right of Way Grant." The 1970 agreement is entitled "Right-of-Way Agreement." The 1998 agreement is entitled "Amendment of Right of Way Agreement" and refers to the 1970 contract as the "Original Right of Way Agreement."
[5] The 1998 agreement provides: "The Original Right of Way Agreement and a certain Right of Way Grant dated November 2, 1956, recorded at COB 119, Page 244, Instrument Number 50069 of the conveyance records of this Parish, to Interstate Oil Pipe Line Company, also a predecessor to Grantee, authorized Grantee to construct, maintain and operate multiple pipelines on the Property..."
[6] LSA-C.C. art. 748 states:

The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate.
Therefore, if Coastal avers that the servitude has become unduly burdensome, it has a remedy in the law to request a judicial relocation of the servitude. The new location, however, must be equally convenient to Exxon and any costs of the relocation are to be borne by Coastal. We note, however, that in its answer and subsequent pleadings, Coastal never plead the inconvenience of the servitude nor did Coastal plead for the designation of a new location.
[7] It is common practice to have locked gates restricting access to private property, but to provide keys to those having a legal right of access, such as hunting clubs, utility companies, loggers, and oil companies.